h GASKINS, J.
The defendant, Mickey McCurtis, appeals his convictions and sentences for unauthorized entry of an inhabited dwelling, for which he was sentenced to serve ten years at hard labor, and oral sexual battery, for which he was sentenced to serve twenty years at hard labor, without benefit of parole, probation, or suspension of sentence. The sentences were ordered to be served concurrently. For the following reasons, we affirm the convictions and sentences.
FACTS
During the early morning of September 21, 1997, the victim was asleep in her home. Her two small children were asleep in the next room. The victim awoke to find a telephone cord wrapped around her throat and a pillow slip pulled over her eyes. A man was on top of her, twisting her head back and forth in what she felt was an attempt to break her neck. The victim recognized the assailant’s voice as that of the defendant. The defendant held a knife against the victim, placed his hand under her clothing and fondled her breasts. He then pulled off the victim’s shorts, cut off her underwear and performed a noneonsensual act of oral sexual battery upon the victim’s vaginal area. At one point during the attack, the victim was also able to see the defendant’s face. The defendant then threatened the victim with the knife and demanded money. The victim gave $25 to the defendant and he left the scene.
The victim took her children and went to the home of family friends. The victim was very upset and told her friends what had transpired. The local sheriffs department was notified. The defendant was arrested and charged with aggravated burglary and aggravated oral sexual battery. The defendant was tried by jury on June 21-22, 1999 and was found guilty of the responsive charges of unauthorized entry of an inhabited dwelling and oral sexual battery. The state then charged the defendant with being a multiple offender, based upon a 1995 guilty plea for | ¡.aggravated battery. Following a habitual offender hearing on July 27, 1999, the court adjudged the defendant to be a second felony offender.
The defendant appeared before the court for sentencing as a second felony offender on September 7, 1999. For the unauthorized entry conviction, the court imposed a sentence of ten years at hard labor. For the offense of oral sexual battery, the court imposed a sentence of twenty years at hard labor, without benefit of parole, probation or suspension of sentence. The sentences are to be served concurrently. The court denied a timely motion for reconsideration of sentence. The defendant appealed, urging that the evidence does not support the guilty verdicts; there was insufficient proof of the validity of the prior conviction for use as a predicate offense; and, the sentences imposed are excessive.
SUFFICIENCY OF EVIDENCE
The defendant contends that the evidence at trial is insufficient to establish that the defendant committed the offenses *153 of unauthorized entry of an inhabited dwelling and oral sexual battery.[1] This argument is without merit.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992).
laThis court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-thé-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. SeeState v. White, 28,095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or structure belonging to another and used in whole or in part as a home or place of abode by a person. La. R.S. 14:62.3.
Oral sexual battery is the intentional engaging in the touching of the genitals of the victim by the offender using the mouth or tongue of the offender, when the victim is not the spouse of the offender, and when the offender compels the other person to submit by placing the person in fear of receiving bodily harm. La. R.S. 14:43.3.
The victim testified that on September 21,1997 she and her two children lived in a rent house in Chatham, Louisiana. She had been living with Stanley Hicks up until about a month prior to this date, but Hicks had been jailed for drug trafficking. No one, other than the victim, had any authority to let anyone into the residence. Early in the morning of September 21, the victim was in her bedroom; Rher children were asleep in an adjoining room. The victim awoke to find a telephone cord wrapped around her neck and a pillow slip pulled over her eyes. “A guy” was on top of her, shaking her head from side to side as if trying to break her neck.
The victim tried to scream. The perpetrator said “shut up bitch.” The victim recognized the voice and called the perpetrator by his nickname, “Duck.” He told her, repeatedly, to stop calling his name and to shut up. The defendant told the victim to turn over onto her back. She turned on her side and got the cord away from her neck. She also got the pillow slip out of his hand.
The defendant pulled a knife from his pocket, held the open blade up to the victim and told her to lie back. The victim could see the defendant’s face. The victim was wearing a bra, a tee shirt, panties and *154 shorts. The defendant put his hands under her shirt and bra and fondled her breasts. The victim didn’t run away because the defendant was holding the knife up to her chest. She was afraid he was going to harm her or her children. He then pulled off the victim’s shorts, cut off her underwear and engaged in oral sexual battery against the victim’s will. The victim was certain that the defendant’s tongue touched her vaginal area. According to the victim, she was afraid the defendant would kill her if she resisted.
The victim told the defendant she had to go to work. The defendant asked if the victim had any money. She initially said she didn’t have any, but he threatened her with the knife. She said she had $25 and told the defendant that he could have it. The defendant told the victim he had broken her back door.
The defendant told the victim to give one good reason why he shouldn’t kill her. She promised he wouldn’t get any trouble from her. The defendant talked about how he “wanted” the victim and would pay her $100 per week. The defendant then allowed the victim to get up and go to her children’s room where she obtained $25 to give to him. She gave him the money because she was afraid | sand to get him to leave the house. The defendant told the victim that if she called the police, he would come back and kill her. The defendant left the house.
The victim put her children in her car and drove to the home of Hick’s brother and sister-in-law, Delton and Debra Hicks. The victim told Debra that “Duck” had attacked her. The victim said she had gotten a good look at the defendant in her house when she turned on the light in her daughter’s room to get the money and when she gave the money to the defendant. She identified him in court as the perpetrator. She had never had any romantic or sexual relationship with the defendant. He was just a guy who came by on occasion to visit Stanley Hicks. The victim had not given defendant permission to be in the house on this date. The victim feared defendant would kill her and her children if she didn’t give him the money he demanded.
At trial, the victim said she looked at the back door of her house after she went to the police. The screen had been cut and the door handle was “all jimmied and messed up.” She didn’t hear the defendant enter the house because she had a noisy am conditioner running in her bedroom. According to the victim, even though Stanley Hicks had kept dogs at the house, she did not think that there were any dogs there on the date of this incident. The victim also stated that, even though no one ever suggested that she go to a hospital for tests, she did consult a chiropractor for neck pain.
At trial, Delton and Debra Hicks corroborated the victim’s testimony. Debra Hicks stated that the victim came to her house early in the morning of September 21, 1997. She was crying and had her children with her. The victim said “Duck” had broken into her house. Debra called 911 and then took the victim to meet law enforcement officials in Chatham. Debra didn’t see any dogs at the victim’s house when they arrived there later.
| fiDelton Hicks testified that he’d known the victim for years. The victim came to Delton’s house early in the morning on the date in question, upset and crying. She said “Duck” had broken into her house and performed oral sex on her. Hicks told the victim that “Duck’s” real name was Mickey McCurtis.
Deputy Ricky Cash testified that he met the victim and Delton and Debra Hicks at the Chatham town hall pursuant to their telephone call. The victim said the defendant had broken into her house and tried to rape her and had robbed her. Deputy Cash went to investigate the crime scene. The back door of the victim’s house was damaged — it looked like someone had knocked the door open and the frame was broken. Deputy Cash didn’t recall a *155 screen being there. He also found a piece of telephone cord on the floor next to the victim’s bed. Deputy Cash found a torn piece of cloth from a pillow case in the bedroom. In addition, he found a pair of panties which had been cut. Deputy Cash said the panties, the condition of the door, the strip of cloth, the torn pillow case and the telephone cord were consistent with what the victim said had happened. Deputy Cash knew the defendant’s nick name to be Duck.
After being advised of his Miranda rights, the defendant denied knowing anything about these offenses. He said he was not sure where he was at the time this offense was committed. He thought he might have been in Jonesboro, Louisiana, and he might have slept in a car that night. Deputy Cash didn’t make any effort to take fingerprints from the eviden-tiary items he found because they “weren’t conducive for fingerprinting.” No rape kit was used because the victim said there hadn’t been any ejaculation and, therefore, there was nothing to test.
The defendant argues there was no scientific evidence to support the victim’s claim that she was attacked or to support her claim that defendant was the perpetrator, i.e., no evidence similar to a rape protocol was obtained, there was no evidence the victim’s neck was injured, no latent finger prints were taken from the 17house to link them to the defendant, and the bed sheets were not introduced into evidence. The defendant also points to minor discrepancies between the testimony of the victim and an investigator as to the damage to the door through which defendant obtained unauthorized entry to the house, the presence of dogs at the house, and the degree to which victim’s bed was disheveled.
The state argues that since there was no sexual intercourse, there could not be any DNA evidence. The inconsistencies between the testimony of the victim and the investigator pertained to inconsequential matters and the jury could accept the victim’s testimony as to the crucial facts.
The evidence, viewed in the light most favorable to the prosecution, shows that the defendant intentionally entered the victim’s occupied house without permission. The verdict of guilty of unauthorized entry of an inhabited dwelling was proven beyond a reasonable doubt. The evidence also shows that the defendant intentionally touched the genitalia of the victim with his tongue, that she is not the spouse of the offender, and that the act occurred while the defendant compelled the victim to submit while placing her in fear of receiving bodily injury from a knife with which the defendant threatened the victim. Thus, the evidence also supports the verdict of guilty of oral sexual battery beyond a reasonable doubt. The defense arguments concerning insufficiency of the evidence are without merit and the convictions are affirmed.
HABITUAL OFFENDER
The defendant argues that the evidence at the hearing on the habitual offender charge was insufficient to support a finding that the defendant was a second felony offender for purposes of La. R.S. 15:529.1. The defendant argues that the state failed to show that the defendant was adequately informed of his right to trial by jury, right to confrontation, and right against compulsory self-incrimination, pri- or to the entry of his guilty plea on the predicate offense.
|sTo prove that a defendant is a multiple offender, the state must prove by competent evidence that there is a prior felony conviction and that the defendant is the same person convicted in the previous proceeding. State v. Jeffers, 623 So.2d 882 (La.App. 2d Cir.1993). In order to enhance a sentence with a prior guilty plea, the state bears the burden of proving that the guilty plea was constitutionally taken. Before entering a guilty plea, a defendant must be advised of and waive his constitutionally guaranteed right to a jury trial, *156 right to confrontation and right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Flanagan, 32,535 (La.App.2d Cir.10/29/99), 744 So.2d 718. As a general rule, the best method of proving a free and voluntary waiver of constitutional rights is the recorded transcript of the Boykin examination. However, the state is not required to meet its burden of proof in a habitual offender hearing only through the use of a “perfect” transcript of the guilty plea colloquy. This burden may be met by the state where it submits a very general minute entry but also a well-executed plea of guilty form. State v. Shelton, 621 So.2d 769 (La.1993).
Following the convictions on the present offenses, the prosecution charged the defendant with being a multiple offender, based upon a 1995 conviction for aggravated battery. The prosecution affirmatively showed that the defendant was the same individual who entered a plea of guilty to the aggravated battery charge in 1995. At the hearing on the multiple offender charge,- the state presented the testimony of Deputy Nelson Spillers that he investigated the aggravated battery case against the defendant and the defendant convicted in that case was the same individual presently before the court on the multiple offender charge. Probation and Parole Officer Audie Edwards testified that he supervised the defendant while he was on probation for aggravated battery and identified the defendant in open court.
19The state also introduced the bill of information from the prior guilty plea conviction for aggravated battery, as well as the court minutes and the judgment. Attached to the judgment, and labeled as “Exhibit A,” is a waiver of rights form executed by the defendant, his attorney and the trial court judge at the time the defendant pled guilty to aggravated battery.
This document shows that prior to the entry of the guilty plea for aggravated battery, the defendant was advised of his Boykin rights and indicated that he understood those rights which were waived by the entry of the guilty plea. The defendant was informed of the nature of the charge against him, the factual basis of the charge, and the penalty for the offense. The document sets forth that a plea agreement was reached in this case and shows an agreed upon sentence. The defendant indicated that his plea was free and voluntary. The document is signed by the attorney who represented the defendant in that proceeding, indicating that the defendant was fully informed of his rights and the consequences of his guilty plea and that the attorney fully informed the defendant of his rights. The defendant also signed the document, acknowledging that he had been fully informed of his rights and the consequences of his guilty plea and that his act of pleading guilty was a knowing, intelligent, free and voluntary act. The trial judge signed the document indicating that an advice of rights colloquy was held with the defendant and the defendant made a knowing, intelligent, free and voluntary act of pleading guilty.
Through the minute entry, judgment and the waiver of rights form contained in Exhibit A, the state showed that the defendant was represented by counsel, that he was fully informed of his rights under Boykin and that he made a free and voluntary waiver of those rights in choosing to plead guilty to aggravated battery. Therefore, the defendant’s argument in the multiple offender hearing in Imthe present case, attacking the prior guilty plea, is without merit. The trial court correctly adjudged the defendant to be a second felony offender.
EXCESSIVE SENTENCE
The defendant was sentenced as a habitual offender to serve ten years at hard labor for the offense of unauthorized entry of an inhabited dwelling and twenty years at hard labor without benefit of parole, probation or suspension of sentence *157 for the offense of oral sexual battery, with the sentences to be served concurrently.[2] The defendant contends that the sentence imposed was harsh and excessive under the facts and circumstances of this case and that the trial court erred in denying the motion to reconsider sentence. The defendant argues that, contrary to the trial court’s findings, the crimes committed did not manifest cruelty to the victim — there was no evidence, other than her own testimony, that she sought treatment for any injuries. The pocket knife used by defendant was not the “most egregious use of weaponry available.” The defendant maintains also, contrary to the court’s findings, that he did not create a risk of death or great bodily harm to more than one person because the victim’s children were neither awakened nor threatened and only the victim was threatened during the course of the crimes. The defendant urges that, since the oral sexual battery constituted only a “minimal intrusion and encompassed a very short period of time,” he should have been given the minimum sentence.
The permissible sentence for unauthorized entry of an inhabited dwelling is a fine of not more than one thousand dollars or imprisonment with or without hard labor for not more than six years, or both. La. R.S. 14:62.3. As a second felony offender, the defendant’s sentencing exposure on this charge was from three to Intwelve years. La. R.S. 15:529.1 A(-l). The sentence imposed, ten' years, is not the maximum.
The permissible sentence for oral sexual battery is imprisonment, with or without hard labor, without the benefit of parole, probation or suspension of sentence, for not more than fifteen years. La. R.S. 14:43.3. As a second felony offender, the defendant’s sentencing exposure on this charge was from seven and one-half to thirty years, without benefits. The sentence imposed, twenty years, is not the maximum.
Prior to imposing sentence, the court conducted a hearing. Defense counsel stated that all the mitigating factors were reflected in the jury’s responsive verdicts. The defendant then made a long speech, denying his involvement in these crimes.
The court found that the defendant manifested deliberate cruelty by placing a cord around the victim’s neck and confronting her with a knife. The court also noted further reasons for the sentence. The defendant created a risk of death or great bodily harm to more than one person because there were two small children in the house. The defendant used threats of violence. He told the victim he would kill her if she reported the crime. He used a dangerous weapon while committing the offense. His conduct threatened serious harm. There was no excuse or justification for the offenses. The victim did not facilitate the offenses. The defendant had not made any compensation to the victim. The defendant had a history of criminal activity. The crime was likely to happen again. The defendant was not likely to respond positively to probationary treatment because he refused to acknowledge culpability. Imprisonment would not entail a hardship on the defendant’s dependents. There were no other mitigating circumstances. The court made findings that imprisonment was needed and that a lesser sentence would 112deprecate the seriousness of the offenses. The defendant was forty years of age at the time of sentencing.
During its enumeration of aggravating factors, the court considered whether, subsequent to the crime, the defendant used or caused others to use violence, force or threats with the intent to influence the institution, conduct or outcome of these criminal proceedings. The court said that the defendant did so by telling *158 the victim that he would kill her if she reported his crime. The defendant objects to this consideration, arguing that the trial court incorrectly found that he attempted to influence the outcome o.r conduct of the proceedings. The defendant urges that all actions he took were part of the commission of the actual offense. Given the court’s explanation of its consideration of this aggravating factor and the defendant’s attempt to avoid the institution of prosecution against him by threatening the life of the victim if she reported the crime, we do not find that the trial court erred in its consideration of aggravating factors in imposing sentences in this case.
Clearly, the court’s articulation of reasons for the sentences imposed, as well as the evidence of record is sufficient to comply with the requirements of the jurisprudence and the requirements of La.C.Cr.P. art. 894.1. The sentences are lawful and less than the maximum sentences that may have been imposed. The victim was subjected to a horrifying experience of being awakened with a cord around her neck, being threatened with a knife and having her clothing cut from her body. Contrary to defense counsel’s assertion, the act the defendant committed certainly cannot be characterized as “a very minimal intrusion.” There is no showing of abuse of the trial court’s broad sentencing discretion. The sentences imposed are tailored to both the offender and the offenses and do not constitute the needless and purposeless imposition of pain and suffering, nor do they shock the 113sense of justice. Accordingly, we find that the sentences imposed were within the trial court’s discretion and are not excessive.
Finally, the defendant argues that, because La. R.S. 14:43.3, dealing with oral sexual battery, provides that the maximum sentence for the offense is fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence, only fifteen years of his sentence on that charge as a multiple offender may be imposed without benefit of parole. In support of his argument, he urges that the legislature did not provide that habitual offender sentences should be served “in the same manner” as the sentence for the underlying offense, as is stated in the attempt statute, La. R.S. 14:27. The defendant was sentenced as a multiple offender under La. R.S. 15:529.1, which provides in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children’s Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction....
La. R.S. 15:529.1 G provides that, “Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.”
The Louisiana Supreme Court in State v. Bruins, 407 So.2d 685 (La.1981), stated that it is not a crime to be a habitual offender. However, the statute increases the sentence for a recidivist. The penalty increase is computed by reference to the sentencing provisions of the underlying of *159 fense. Similarly, the 1 uconditions imposed on the sentence are those called for in the reference statute. In Bruins, the court found that the defendant who was being sentenced as a second felony offender for armed robbery, could be sentenced without benefit of parole because that was provided for in the armed robbery statute. See also State v. Tate, 99-1483 (La.11/24/99), 747 So.2d 519. Bruins has been followed in State v. Richard, 550 So.2d 300 (La.App. 2d Cir.1989); State v. Demouchet, 595 So.2d 389 (La.App. 3d Cir.1992); and State v. Rowell, 98-780 (La.App. 5th Cir. 2/10/99), 729 So.2d 71. Further, the penalty provisions for oral sexual battery provide that the entire sentence shall be imposed without benefit of parole, probation or suspension of sentence, as distinguished from those for offenses which provide only that a minimum term of imprisonment is to be served without benefits. Accordingly, we find that the trial court did not err in ordering that the entirety of the defendant’s twenty-year hard labor sentence for oral sexual battery be served without the benefit of parole as well as probation and suspension of sentence.
CONCLUSION
For the reasons stated above, we affirm the convictions and sentences of the defendant, Mickey McCurtis.
AFFIRMED.

. Although the record does not reflect that the defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.

. The defendant complains that the trial court failed to give the defendant credit for time served. However, credit for time served is self-executing under La.C.Cr.P. art. 880. Therefore, there is not need to amend the sentence.