796 So.2d 127 (2001)
STATE of Louisiana, Appellee,
v.
Deon L. HILL, Appellant.
No. 35,013-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2001.
*129 Peggy J. Sullivan, Louisiana Appellate Project, Monroe, Mary L. Harried, Assistant Indigent Defender, New Orleans, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Laura O. Wingate, J. Thomas Butler, Assistant District Attorneys, Counsel for Appellee.
Before WILLIAMS, GASKINS and KOSTELKA, JJ.
GASKINS, J.
The defendant, Deon L. Hill, was convicted of illegal use of a weapon while committing a crime of violence. He was then adjudicated a second felony offender and sentenced to 15 years at hard labor, without benefit of probation or suspension of sentence. The defendant now appeals. The conviction and sentence of the defendant are affirmed.

FACTS
At about 6:00 p.m. on May 18, 1999, Marlon Lemons and Michelle Clem were in the front yard of her home on 76th Street in Shreveport, visiting with friends Nehemiah Stafford and Linda Williams. The defendant then drove up in his girlfriend's car. The girlfriend, Nikesha Lemons, is Mr. Lemons' sister, and she was in the front passenger seat. The defendant stopped the car in the street and got out, approximately 10 to 15 feet from most of the victims. The defendant yelled words to the effect of "What's up, Kojack," Mr. Lemons' nickname.
As Mr. Lemons turned and started to walk toward the defendant, Ms. Clem realized that the defendant was pulling a gun. She called out and warned Mr. Lemons. As the defendant began firing the pistol, Mr. Lemons ducked behind his parked automobile. Mr. Stafford fled to the back of the residence. Ms. Clem pushed her 6-year-old child, who was about to come outside, back into the house. Ms. Williams also ran into the house and fell to the floor. Ms. Clem's mother was also inside the front room of the house.
The defendant began shooting indiscriminately with the .45 caliber semiautomatic pistol. One round hit the automobile Mr. Lemons was crouching behind. Another round hit a trash can, and several bullets hit the Clem house and the house next door. All of the bullet holes found by the *130 police were located three to six feet off the ground.
After the defendant emptied the clip in his pistol, he ejected that clip, reloaded another clip, and resumed firing. All together, the defendant fired at least 13 rounds into the neighborhood.[1] He then picked up the spent clip and sped off. Fortunately, no one was hit by any of the bullets.
As the defendant drove off, Mr. Lemons attempted to give chase in his car, but was unable to do so. The police were called, and after investigating the scene, a warrant was issued for the defendant. However, the police were unable to locate the defendant.
Approximately a month later, Mr. Lemons encountered the defendant at a gas station. Mr. Lemons attempted a "citizen's arrest" of the defendant by pulling a pistol on the defendant.[2] The defendant's friends took Mr. Lemons' gun, but Mr. Lemons prevented the defendant from leaving until the police arrived and arrested both of them.
After his arrest, the defendant was Mirandized and gave a statement to the police admitting to the shooting. He stated that he was angry with Mr. Lemons for allegedly hitting his sister, the defendant's girlfriend, during an argument on the day of the shooting. According to the defendant, when he got home and learned of the siblings' altercation, he "just lost it" and went to confront Mr. Lemons. He admitted that he fired the weapon but denied trying to hit anyone. He maintained that he was only trying to scare Mr. Lemons. He also told the police that he disposed of the gun by throwing it off the Jimmie Davis Bridge into the Red River.
Following a jury trial, the defendant was found guilty of illegal use of a weapon while committing a crime of violence, the crime of violence being aggravated assault.
The state filed a habitual offender bill of information, alleging that the defendant had previously pled guilty to manslaughter in 1994 and had been sentenced to seven years. The defendant was on parole for that offense at the time of the shooting. The defendant filed an objection to the habitual offender bill of information.
The defendant pled not guilty to the habitual offender bill of information, and the matter was tried. The state introduced the bill of information and minutes of the December 9, 1994 guilty plea for manslaughter, and through expert testimony, established that the fingerprints on the manslaughter bill of information were those of the defendant. The trial court adjudicated the defendant as a second felony offender.
The defendant was sentenced to "15 years at hard labor without benefit of probation or suspension of sentence." The defendant filed a motion to reconsider his sentence, which was denied. This appeal followed.

SUFFICIENCY OF EVIDENCE
The defendant argues that the matter was a family dispute, and that he fired because he was apprehensive about his own safety. The defendant further argues that the state did not prove that he committed an aggravated assault while firing the .45 caliber pistol into the neighborhood. The state argues that the evidence *131 clearly established that the defendant discharged a dangerous weapon during an aggravated assault.
La. R.S. 14:94 provides, in pertinent part:
A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
. . . .
F. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence or violation of the Uniform Controlled Dangerous Substances Law, shall be imprisoned at hard labor for not less then ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence....
A crime of violence, defined in La. R.S. 14:2(13), includes the offense of aggravated assault.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard for appellate review of sufficiency of the evidence claims is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. In reviewing sufficiency of the evidence, we must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
This court's authority to review questions of fact in a criminal case is limited to an evaluation of the sufficiency of the evidence under the Jackson standard and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a trier of fact's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ford, 28,724 (La. App.2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.
The defendant was convicted of illegal use of a weapon while committing a crime of violence, with the crime of violence being aggravated assault. Assault is defined as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. Aggravated assault is defined as "an assault committed with a dangerous weapon." La. R.S. 14:37. An aggravated assault conviction requires proof of only general criminal intent or a showing that the defendant in the ordinary *132 course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from the defendant's act or failure to act. La. R.S. 14:10; State v. Dunn, 30,560 (La. App.2d Cir.2/25/98), 709 So.2d 852.
As to the incident leading up to the shooting, Mr. Lemons testified that he and his sister quarreled verbally but he did not hit her. The sister, the defendant's girlfriend, testified that her brother had struck her and punctured her car tires. She further testified that the defendant lost control when he found out about the incident. According to her, she and the defendant searched out her brother at Ms. Clem's home because she was going to let the defendant "fight" with her brother and that things were not meant "to go that far."
The defendant stopped on a street, called out the name of his apparent victim, pulled out a .45 caliber pistol and emptied two clips into the neighborhood while firing at his girlfriend's brother. Not only did he stop to reload another clip, he had the presence of mind to pick up the discarded clip before fleeing the crime scene. Some of the people in the crossfire (including the intended victim), were only 10 to 15 feet from the defendant. All bullet holes found were three to six feet from the ground, showing that the defendant was firing within the height of a person.
The defendant contends that the evidence was not sufficient to prove his guilt beyond a reasonable doubt. He argues that he shot because he was afraid of Mr. Lemons, claiming that he thought Mr. Lemons was running to get a gun. However, a careful review of the record shows no evidence of threatening acts by Mr. Lemons, or that the defendant was in any danger of imminent harm from him. Instead, the evidence shows that the defendant initiated the incident by driving up and, without warning, opening fire at Mr. Lemons and several other innocent bystanders.
The defendant also asserts that Mr. Lemons' testimony that he initially tried to pursue the defendant as he fled the crime scene indicated that Mr. Lemons had no apprehension of receiving a battery. However, the testimony of Mr. Lemon, Ms. Clem, Ms. Williams and Mr. Stafford adequately demonstrates their fear when the defendant opened fire upon them, forcing them to frantically duck, run and/or crawl to safety.
Viewing the evidence in the light most favorable to the prosecution, this court finds that a rational trier of fact could have found that the defendant committed the offense of illegal use of a weapon while committing a crime of violence, namely aggravated assault. Consequently, this assignment of error is without merit.

SECOND FELONY OFFENDER ADJUDICATION
The defendant next challenges the use of his prior guilty plea in the enhancement proceeding on the grounds that in the previous case the court did not follow the guidelines of La.C.Cr.P. art. 556.1. Particularly, the defendant alleges that the court in this prior offense failed to ascertain his educational background or determine his ability to understand the plea or its consequences.
Louisiana's habitual offender law, La. R.S. 15:529.1(D)(1)(b), provides in pertinent part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact.... A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of *133 the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis thereof, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), a case predating La.C.Cr.P. art. 556.1, the supreme court explained the burden of proof scheme in habitual offender proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
The state produced the minutes and transcript of the Boykin colloquy for the defendant's prior offense. They show that the court informed the defendant who was represented by counselof his right to a jury trial, his right to confront his accusers and his privilege against self-incrimination. The evidence shows that the defendant waived those rights. Louisiana courts have not required the state to prove the further elements that the defendant raises. State v. Guzman, 99-1528 & 99-1753 (La.5/16/00), 769 So.2d 1158. Nothing about the plea colloquy suggests that the defendant did not understand the prior proceedings.
This assignment is without merit.

EXCESSIVE SENTENCE
The defendant argues that the sentence of 15 years was excessive, considering the actions of the victim, and the background of the defendant. The state argues that the record shows the trial court considered the guidelines in La.C.Cr.P. art. 894.1; that the trial court found that the defendant's actions demonstrated a reckless and careless disregard for human life; and that the trial court did consider mitigating factors.
The defendant was found guilty of illegal use of a weapon while committing a crime of violence and was adjudicated a second felony offender. A conviction under La. R.S. 14:94(F), without enhanced circumstances, provides a sentencing range of 10 to 20 years, without benefit of probation, parole, or suspension of sentence. A finding of second felony offender status under La. R.S. 15:529.1 delineates a sentencing range of no less than one-half the longest *134 term, and no more than twice the longest term, to be served without benefit of probation or suspension of sentence. The defendant was sentenced to 15 years, without benefit of probation or suspension of sentence.[3] This sentence was only five years above the minimum and 25 years less than the maximum.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Contrary to the defendant's assertion, the record contains an ample showing of the considerations taken into account by the trial court in imposing the sentence. Prior to sentencing, the trial court heard the 24-year-old defendant provide a detailed recitation of mitigating factors, including his family and social history. Among these was the fact that the defendant was the father of four children.[4] However, in imposing sentence, the trial court emphasized the very serious nature of the instant crime, which the trial court found "exhibited a reckless and careless disregard for human life."
The reasons articulated by the trial court are adequate to support the defendant's sentence. The defendant acted without justification and created a high risk of substantial injury to several people when he sprayed bullets in a residential neighborhood. The crime occurred while *135 the defendant was on parole for manslaughter, an offense which involved him and several other persons beating and kicking someone to death. Obviously, the defendant has not benefitted from the rehabilitative efforts of the criminal justice system. He has shown a disregard for authority and has not presented any matters which would require a reduction in the term of incarceration adjudged by the trial court. There is no requirement that the specific factors of age and the nature of the prior conviction be given any particular weight at sentencing. State v. Callahan, supra, State v. Jones, supra. Thus, there was no manifest abuse of the trial court's wide discretion in the imposition of an almost minimum sentence of 15 years at hard labor, without probation or suspension of sentence, for the conviction and adjudication as a second felony offender. The sentence does not shock our sense of justice.
This argument is without merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The police found 13 spent shell casings, and witnesses estimated from 13 to 20 rounds were fired. At his sentencing hearing, the defendant admitted to 23.
[2] Mr. Lemons testified that he bought the pistol after the May 18, 1999 shooting.
[3] The trial court stated that since the sentence was under the habitual offender law, parole was not excluded, an apparent reference to La. R.S. 15:529.1(G). However, the restrictions on parole eligibility imposed on multiple offender sentences "are those called for in the reference statute." State v. Tate, 99-1483 (La.11/24/99), 747 So.2d 519; State v. McCurtis, 33,737 (La.App.2d Cir.9/27/00), 769 So.2d 150. See also State v. Richard, 550 So.2d 300 (La.App. 2d Cir.1989), and State v. Demouchet, 595 So.2d 389 (La.App. 3d Cir.1992). Since the defendant was convicted under La. R.S. 14:94(F), which provides for a sentencing range of 10 to 20 years, without benefit of parole, probation, or suspension of sentence, his sentence as a habitual offender should have excluded parole eligibility.
[4] At the time of the shooting, the defendant and Ms. Lemons had a two-month old infant, and she was pregnant with their second child who was born while the defendant was in jail. According to the defendant, a source of conflict between him and the Lemons family was the fact that he and another woman had a child the same age as his older child with Ms. Lemons.